626

## SAM R. FLOYD v. ARKANSAS STATE BOARD OF PHARMACY

5-5688                                          473 S.W. 2d 866

Opinion delivered December 20, 1971

*Harper, Young & Smith,* for appellant.

*Warren & Bullion,* for appellees.

CARLETON HARRIS, Chief Justice. As part of an investigative procedure, appellee, Arkansas State Board of Pharmacy, mailed two prescriptions to appellant, Sam R. Floyd. The prescriptions were entirely fictitious, but were filled by appellant and mailed to an Ethel Draper of Ferndale, Arkansas. Thereafter, Floyd was charged by the Arkansas State Board of Pharmacy with having violated the pharmacy laws of Arkansas, by selling Equanil to Mrs. Ethel Draper of Ferndale, Arkansas, without a valid prescription therefor on January 2, 1969, and by selling Dexamyl to Mrs. Ethel Draper of Ferndale, Arkansas, without a proper prescription therefor on January 6, 1969. After a hearing, the board found that Floyd was guilty of the violation of the pharmacy laws of the State of Arkansas, and "that such violation in the pharmacy laws of the State of Arkansas was sufficient to justify the suspension or revocation of Sam R. Floyd's

license to practice pharmacy in the State of Arkansas". The board ordered that Floyd be suspended from practicing pharmacy for a period of 60 days. Appellant appealed to the Miller County Circuit Court, and that court found that the order of the board failed to separately set forth its findings of fact and conclusions of law as required by Ark. Stat. Ann. § 5-710 (Supp. 1969), and remanded the case to the board for the latter to reduce to writing its findings. Appellant attempted to appeal to this court from the ruling by the Circuit Court but we held that the order of remand was not an appealable order, and dismissed the appeal. See *Floyd* v. *Arkansas State Board of Pharmacy,* 248 Ark. 459, 451 S. W. 2d 874.

On remand, no further testimony was taken, but the board entered its findings of fact and conclusions of law as directed by the court and ordered that Floyd's license be suspended for a period of 60 days. Findings particularly pertinent to this appeal are as follows:

"1.   On or about December 31, 1968, Woodrow Little, Chief Inspector of the Arkansas State Board of Pharmacy, prepared a fictitious prescription for 30 unit dosages of Equanil, a prescription drug, purportedly signed by H. H. Chandler, M. D. and purportedly written for Ethel Draper of Ferndale, Arkansas and mailed the fictitious prescription to Gibson's Pharmacy, Texarkana, Arkansas.

2.   This fictitious prescription was one of many mailed as a part of a state-wide investigative procedure to determine the extent of illegal drug sales in Arkansas.

3.   There was and is no physician licensed in Arkansas by the name of H. H. Chandler, which fact could have been ascertained by Sam R. Floyd on proper inquiry.

4.   H. H. Chandler is an officer of the Arkansas State Police Attached to the Drug Abuse Control Division.

5. Ethel Draper was the maiden name of the wife of Woodrow Little.

6. Ferndale, Arkansas is not a regularly listed Arkansas Post Office.

7. The prescription contained no date.

8. The prescription contained no descriptive strength of the drug, which is made in several strengths.

9. The fictitious prescription was received by Sam R. Floyd on January 2, 1969.

10. Sam R. Floyd wilfully filled said fictitious prescription by placing 30 tablets of Equanil in a container and mailing same to Ethel Draper with a bill for the drugs and service in the amount of $2.62 on January 2, 1969.

11. Sam R. Floyd illegally, wilfully and wrongfully placed upon said prescription the designation '400 mg.' thus selecting the strength of the drug.

12. Sam R. Floyd admitted that he had sold the drugs without making any investigation as to the existence of a physician named H. H. Chandler but only because he had a customer named Draper, not Ethel Draper, but with the last name of Draper."

These findings all related to the sale of the tablets of Equanil and almost identical findings were made relative to the sale of 30 tablets of Dexamyl (except for selecting the strength) an amphetamine drug. The board then found that Floyd had "wilfully violated the pharmacy laws of Arkansas by selling Dexamyl and Equanil without a valid prescription therefor". This order was appealed to the Miller County Circuit Court, and that court affirmed the order of the board. From this judgment of the circuit court, appellant brings this appeal. For reversal, it is first asserted that the trial court erred in attempting to remand the cause to the State Board of Pharmacy to correct its void order, and it is also urged

that the action by the Board of Pharmacy was unsupported by laws or facts. We proceed to a discussion of these points.

In making his argument, appellant admits that he filled the two prescriptions but "that he had done this on the belief that he was rendering a service to a regular customer". Ark. Stat. Ann. § 72-1040 (Supp. 1969) provides that the Board of Pharmacy may revoke an existing license of a registered pharmacist or practicing druggist or may suspend said license if he is found guilty by the board of any one of ten offenses which are specifically set out. Number 8, the offense here at issue, provides that the statute is violated if "said person has wilfully violated any of the provisions of the pharmacy laws of the State of Arkansas;". The original order of the board only found that Floyd was guilty "of the violation of the pharmacy laws of the State of Arkansas", and appellant's argument is set forth in his brief as follows:

"Appellant contends that the court erred in attempting to remand the case to the Board for the reason that the Board failed to make a specific finding that Sam Floyd wilfully violated the pharmacy laws, and that said finding of no wilful violation does not warrant the suspension of Mr. Floyd's Arkansas registration (license) to practice pharmacy within the State of Arkansas for a period of 60 days. * * * *

It is noted that the finding by the Board is void of any reference to a wilful violation of the pharmacy laws, nor does it find that Mr. Floyd 'wilfully violated' any of the provision of said pharmacy laws."

It is urged that the original order of the board was void because of its failure to make the required findings of fact; that the trial court was empowered to remand the cause "for further proceedings", meaning the taking of testimony, but could not remand for the simple purpose of having the board make findings of fact and conclusions of law on the testimony which had been previously taken. More specifically stated, appellant principally contends that the omission of the word "wilful"

in the board's first order had the effect of finding that the violation was not wilful; that the case could not be remanded simply to allow further and more specific findings and that his constitutional rights had been violated in that the procedure followed was a denial of due process. Though this last is not pinpointed, it is apparently appellant's contention that the original order was void; that the court erred in remanding it, and that the board put the breath of life into a void order by its additional findings, which violated his constitutional rights.

We do not agree. Let it first be said that we completely disagree with appellant when he says that the board's first order by failing to use the word "wilfully" had the same effect as a finding that it was not wilful. To the contrary, it would actually appear that the board's finding "that *such violation* [our emphasis] of the pharmacy laws of the state is sufficient to justify the suspension" was intended to be a finding of a wilful violation. Be that as it may, it certainly did not have the effect of finding that it was not wilful. The complaints about the remand are pretty well answered by the case of *Ford Motor Co.* v. *National Labor Rel. Bd.*, 305 U. S. 364. There, the remand of a case to the National Labor Relations Board for further findings was attacked. In holding the attack to be without merit, the Supreme Court stated:

"If findings are lacking which may properly be made upon the evidence already received, the court does not require the evidence to be reheard. [citing cases] If further evidence is necessary and available to supply the basis for findings on material points, that evidence may be taken. [citing cases] * * * *

There is nothing in the statute, or in the principles governing judicial review of administrative action, which precludes the court from giving an administrative body an opportunity to meet objections to its order by correcting irregularities in procedure, or supplying deficiencies in its record, or making additional findings

where these are necessary, or supplying findings validly made in the place of those attacked as invalid."

Numerous other cases, both State and Federal, are to the same effect.[1] The general rule is found in 2 Am. Jur. Administrative Law § 764 p. 664, where it is stated:

"While some cases hold that a court which is restricted to review on the record may not, without express authority therefor, remand the case to the agency, pending the court's determination of the validity of an order, for the taking of additional evidence, the general rule is that even in the absence of statute, a court which sets aside an administrative determination has the power to remand the case to the administrative agency where such power is necessary to effectuate the demands of justice, and statutes frequently grant such authority to the courts. The court does not encroach upon the administrative function by such procedure, and there is nothing in the principles governing judicial review of administrative acts which precludes the courts from giving an administrative agency an opportunity to meet objections to its order by correcting irregularities in procedure, or supplying deficiencies in its record, or making additional findings where these are necessary, or supplying findings validly made in the place of those attacked as invalid."

It follows that we find no merit in this contention.

Appellant's second point requires but little discussion. It is argued that Floyd did not "wilfully" violate the law. It is first stated that the inducement to appellant to fill the prescriptions was precipitated by the board, and its agent, Mr. Little. This same contention was advanced in *Arkansas State Board of Pharmacy* v. *Patrick*, 243 Ark. 967, 423 S. W. 2d 265, and rejected by this court. Floyd admitted selling the drugs but stated that it was because he had a customer by the name of

---

[1]Examples of State cases are *Hooper v. Goldstein*, (Rhode Island) 241 A. 2d 809; *State Board of Medical Examiners v. Gandy*, (South Carolina) 149 S. E. 2d 644; *State v. Haywood Electric Membership Corporation*, (North Carolina) 131 S. E. 2d 865.

Draper. Even so, there was still a violation. Again, see *Arkansas State Board of Pharmacy* v. *Patrick, supra.* There is no dispute, of course, but that Floyd wilfully and intentionally sent the drugs, after filling the prescriptions, to Ethel Draper. More than that, he even selected the strength of the Equanil sent since this was not shown in the prescription. In other words, he actually prescribed. We are unable to agree that Floyd's violation of the statute was not "wilful".

Affirmed.